UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL FACCIO; CHASTITY FACCIO;
D.F., a minor child; and A.F., a minor child,

        Plaintiffs,

    -v-                  1:10-CV-783
                      (LEAD)

CHRISTOPHER EGGLESTON and
GLENS FALLS POLICE DEPARTMENT,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DANIEL FACCIO; CHASTITY FACCIO;
D.F., a minor child; and A.F., a minor child,

        Plaintiffs,

    -v-                  1:10-CV-699
                      (MEMBER)
CHRISTOPHER REED; HANK DWYER;
KATE McPHILLIP; LAUREY PARKER;
ANNE ZILCH; GLENS FALLS MIDDLE SCHOOL;
and GLENS FALLS CITY SCHOOL DISTRICT,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

DANIEL FACCIO, pro se
P.O. Box 1724
Kingston, NY 12402

CHASTITY FACCIO, pro se
P.O. Box 1724
Kingston, NY 12402

A.F., pro se
P.O. Box 1724
Kingston, NY 12402

D.F., pro se
P.O. Box 1724
Kingston, NY 12402

FITZGERALD, MORRIS, BAKER,          MARTIN A. COHEN, ESQ.
   FIRTH P.C.
Attorneys for Defendants Eggleston and
   Glens Falls Police Department
16 Pearl Street
P.O. Box 2017
Glens Falls, NY 12801

BARTLETT, PONTIFF, STEWART          EILEEN M. HAYNES, ESQ.
   & RHODES, P.C.
Attorneys for Defendants Reed, Dwyer,
   McPhillip, Parker, Zilch, Glens Falls
   Middle School, and Glens Falls City
   School District
1 Washington Street
P.O. Box 2168
Glens Falls, NY 12801

DAVID N. HURD
United States District Judge


## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

Plaintiffs Daniel Faccio ("D. Faccio") and Chastity Faccio ("C. Faccio"), a married

couple, along with their minor children A.F. and D.F. (collectively "plaintiffs" or "Faccios"),

bring these actions asserting several causes of actions under the United States Constitution,

New York State Constitution, federal law, and state law.

Plaintiffs filed Civil Action No. 1:10-CV-699 ("member case") on June 16, 2010,

against Glens Falls City School District ("District"); Glens Falls Middle School ("middle

school"); Christopher Reed, principal of Glens Falls Middle School ("Reed"); Laurey Parker,

assistant principal of Glens Falls Middle School ("Parker"); Hank Dwyer, custodian at Glens

- 2 -

Falls Middle School ("Dwyer"); Kate McPhillip, teacher at Glens Falls Middle School ("McPhillip"); and Anne Zilch, teacher at Glens Falls Middle School ("Zilch") (collectively "school defendants").  Member Compl., Dkt. No. 1.

Plaintiffs filed Civil Action No. 1:10-CV-783 ("lead case") on July 1, 2010, against the Glens Falls Police Department ("Department") and police officer Christopher Eggleston ("Eggleston") (collectively "police defendants").  Lead Compl., Dkt. No. 1. These two civil actions were consolidated on November 10, 2010, because the allegations derived from the same chain of events.  Civil Action No. 1:10-CV-783 was designated the lead case.

Both the police defendants and the school defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  The police defendants also counterclaimed alleging plaintiffs failed to bring a claim grounded in fact and/or law and requested attorney's fees pursuant to 42 U.S.C. § 1988.  Plaintiffs responded to both motions to dismiss.  Both sets of defendants replied.  The motions were taken on their submissions without oral argument.

Defendants middle school, Reed, Dwyer, Parker, Zilch, and McPhillip were not properly served.  See Dkt. No. 29, 7.  Summons were mailed to all of the defendants by the United States Marshal Service.  The superintendent waived service on behalf of the District, but the remaining defendants did not waive service.  The Marshal Service notified plaintiffs of the failure to serve these defendants, but plaintiffs did not request that the Marshal Service serve the remaining defendants.  See Dkt. No. 29,7.  Under Rule 4(m) of the Federal Rules of Civil Procedure, lack of service results in either a dismissal without prejudice or an order to make service.

However, for the reasons discussed in this Memorandum-Decision and Order, plaintiffs fail to state a claim against these unserved defendants, and the claims against them will be dismissed pursuant to Rule 12(b)(6).

## II.  FACTUAL BACKGROUND

Plaintiff D.F. was a seventh-grade student at the middle school from September 2009 to June 2010.  Plaintiffs allege that during this time, D.F. was subjected to harassment and bullying by faculty, staff, and students.  They claim that the harassment and bullying was because of D.F.'s race, color, orientation, nationality, ethnicity, sex, and origin and assert the harassment occurred every day or every other day.  The Faccios contend they met with middle school officials to report the harassment.  On December 13, 2009,  D. Faccio notified Parker and an "officer of the school" that twelve members of the football team wanted to assault D.F..  D. Faccio also notified Parker and the officer about an incident where an individual driving a pick-up truck followed D.F. from the middle school parking lot, gave D.F. the middle finger, and called D.F. an ethnic slur.

On December 14, 2009, a student gave a written statement to police alleging D. Faccio threatened him.  The next day, December 15, 2009, D. Faccio and A.F., drove to the middle school to pick up D.F..  At the middle school, D. Faccio was approached and arrested by officers of the Department for endangering the welfare of a child.

D. Faccio was transported to the police station where he was searched and questioned.  He also alleges his car was towed from the middle school and searched. Additionally, his minor children, A.F. and D.F.—who were under his supervision at the time of his arrest—were taken to the police station until his wife arrived at the police station.

- 4 -

Plaintiffs claim that the police questioned A.F. and D.F. without their consent when the children were at the police station.

The Faccios contend the harassment of D.F. at school escalated after D. Faccio's arrest. According to the complaint, on January 8, 2010, Reed harassed D.F. and grabbed his arm hard. On April 19, 2010, Zilch yelled at D.F. and spat in his face. On an unspecified date, McPhillip unfairly "wrote up" D.F. for punishment. On one occasion, Dwyer put his hands on D.F. in the school cafeteria in order to physically force D.F. to sit down. In addition, Parker subjected D.F. to occasional lunch detentions where she did not allow D.F. to eat. Finally, plaintiffs allege that the middle school and the District ignored their pleas to stop the harassment of D.F..

## III. <u>DISCUSSION</u>

Both sets of defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the respective complaints fail to state a claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). All reasonable inferences must be drawn in favor of the complainant. <u>See</u> <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010) (citing <u>Hayden v. Paterson</u>, 594 F.3d 150, 160 (2d Cir. 2010)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Instead, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegation." <u>Id</u>. at 1950.

Pro se pleadings are to be construed liberally, particularly if the plaintiffs are alleging civil rights violations.  See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008).  Only the most unsustainable of pro se claims should be dismissed for insufficient pleading.  Id. (citing Boykin v. KeyCorp, 521 F.3d 202, 216 (2d Cir. 2008)).

In their complaints, plaintiffs make numerous allegations of improper behavior by employees of the Department and the District.

## A.  Federal Law Claims Against Police Defendants

The Faccios allege constitutional violations on behalf of D. Faccio as well as minor children A.F. and D.F..  The alleged deprivations occurred during and shortly after D. Faccio's arrest on December 15, 2009.  These include:  (1) false arrest of D. Faccio; (2) illegal search of D. Faccio's person; (3) illegal search of D. Faccio's vehicle; (4) illegal seizure of A.F. and D.F.; (5) illegal questioning of A.F. and D.F.; (6) illegal questioning of D. Faccio after he invoked his Miranda right to have counsel present; and (7) racial profiling.  In construing plaintiffs' complaint liberally, these allegations will be analyzed as claims made pursuant to 42 U.S.C. § 1983.

### 1.  False Arrest of D. Faccio

Plaintiffs allege that on December 15, 2009, D. Faccio was falsely arrested[1] by Eggleston and the Department.  Defendants contend they had probable cause to arrest.

To establish a false arrest claim under § 1983, a plaintiff must show that the defendant intentionally confined him without consent and without justification.  Escalera v.

---

[1]  In their reply, plaintiffs phrase this allegation as unlawful imprisonment.  False arrest and unlawful imprisonment are synonymous under New York law, and a § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law.  DeMeo v. Kean, 754 F. Supp. 2d 435, 443 (N.D.N.Y. 2010) (Hurd, J.).

Lunn, 361 F.3d 737, 744 (2d Cir. 2004).  Probable cause to arrest constitutes justification.
Id.  Probable cause exists "when the arresting officer has knowledge or reasonably
trustworthy information of facts and circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be arrested has committed or is
committing a crime."  Id.

The Faccios claim the arrest was the result of a false report that D. Faccio had a
gun.  According to the complaint, "they [the police officers] said the principal[2] said I had a gun
in the car."  Lead Compl., 1.  Plaintiffs submitted a copy of the statement made to police on
December 14, 2009, by a thirteen-year-old student.  See Dkt. 25, Ex. A.  The student alleged
that D. Faccio threatened him.  Plaintiffs also attached a copy of the misdemeanor complaint
generated by Eggleston that charged D. Faccio with endangering the welfare of a child.  See
Dkt. 25, Ex. B.

The police defendants claim there was probable cause to arrest D. Faccio based
on the student's statement.  Plaintiffs contend the student's statement was false.  As the
allegations in the complaint must be taken as true in a motion to dismiss, it must be assumed
that D. Faccio did not threaten the child, and the child lied to the police.  Even assuming that
the child made a false allegation to the police, a person of reasonable caution would have
still believed the child's statement to be reasonably trustworthy as there was no apparent
reason to doubt the child's statement.  Thus, based off of this statement, police had probable
cause to arrest as there was sufficient knowledge that D. Faccio had committed a crime.

---

[2]  In their complaint against the police defendants, plaintiffs allege that the police told D. Faccio that
Reed made the report.  In their complaint against the school defendants and in their reply, plaintiffs allege
that Parker made the false report.

Because police had probable cause based on the signed statement of the thirteen-year-old alleging that D. Faccio threatened him, the false arrest claim will be dismissed.

### 2. **Illegal Search of D. Faccio**

Plaintiffs allege that D. Faccio was illegally searched after his arrest. As previously discussed, the police had probable cause to arrest D. Faccio and his false arrest claim fails. Searches incident to a lawful arrest are legal. See United States v. Robinson, 414 U.S. 218, 224, 94 S. Ct. 467, 472 (1973). Because D. Faccio's arrest was lawful, it was legal for the police to search his person. Therefore, any claim alleging an illegal search of D. Faccio will be dismissed.

### 3. **Illegal Search of D. Faccio's Vehicle**

Plaintiffs allege their vehicle was illegally searched. According to D. Faccio, "I called my wife to pick up my car from a 2 hour parking. [G]o to find out the P.D. wanted to search my car and towed it anyway. [W]ith a 2 hour parking spot they felt they had to tow my car anyway." Lead Compl., 2. Defendants did not respond to this claim.

An illegal search of a vehicle is a violation of the Fourth Amendment, and a person whose vehicle has been illegally searched by a state actor may make a claim under § 1983. See Torres v. Vill. of Sleepy Hollow, 379 F. Supp. 2d 478, 485 (S.D.N.Y. 2005). Police have authority to search a vehicle if they have probable cause to suspect the vehicle contains evidence of criminal activity or if the arrestee is in reaching distance of the vehicle. See Arizona v. Gant, 129 S. Ct. 1710, 1721 (2009). Police may also search an impounded vehicle in accordance with standard police procedures (commonly referred to as an inventory search). See United States v. Lopez, 547 F.3d 364, 369–70 (2d Cir. 2008).

Taking plaintiffs' allegations as true, the car was towed from a legal parking place and searched by the police. Furthermore, the defendants have not offered a justification for the alleged search, and nothing suggests the police suspected the vehicle contained evidence of criminal activity, nor was D. Faccio within reaching distance of the vehicle. To the contrary, the car was towed and searched after D. Faccio was in custody at the police station. To the extent that plaintiffs sufficiently pleaded a § 1983 claim for the illegal search of their vehicle, the claim must be dismissed because, as discussed below, there are no named defendants against whom to maintain this cause of action.

### a. Sergeant Eggleston

The police defendants argue any claims against Eggleston must be dismissed because he was not personally involved. They assert Eggleston did not physically arrest D. Faccio and had no contact with him during the events on December 15, 2009. They argue that his involvement was limited to taking a statement from the thirteen-year-old child. In support of their position, defendants attached to their motion to dismiss an affidavit from Detective Sergeant Peter Castertino of the Department who stated that he was the arresting officer. Defs.' Mot. to Dismiss, Castertino Aff., Dkt. No. 23–3.

The personal involvement of defendants is an essential element of a § 1983 claim. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). "A plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). There is no respondeat superior liability under § 1983, and a defendant may not be held liable for constitutional violations merely because he or she holds a high position of authority. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.

The complaint states that "the glens falls police department and a police officer by the name of CHRISTOPHER L EGGLESTON made an arrest on the day of 12/15/2009 ." Lead Compl., 1.  As explained above, the claims for false arrest and the illegal search of D. Faccio will be dismissed because there was probable cause to arrest him and the search of his personal was conducted pursuant to a lawful arrest.  With respect to the alleged illegal search of the Faccio's vehicle, the complaint states: "[G]o to find out the P.D. wanted to search my car and towed it anyway." Lead Compl., 2.  There are no allegations that Eggleston was the one who searched the vehicle.  Because plaintiffs have alleged no facts supporting Eggleston's personal involvement in the alleged illegal vehicle search, the claim against him will be dismissed.

### b. **Glen Falls Police Department**

Defendants contend that all claims against the Department must be dismissed because plaintiffs did not plead any facts suggesting the Department had a custom or policy which caused officers to violate plaintiffs' constitutional rights.

A municipal agency may not be held liable under § 1983 by virtue of employing an official who engages in unconstitutional actions.  Monell v. Dep't of Soc. Serv. of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).  In order to impose liability on a municipality, a plaintiff must identify a municipal policy or custom that caused the injury.  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997).  Furthermore, the plaintiff must demonstrate that the municipality, through deliberate conduct, was the moving force behind the injury.  Thus, plaintiff must establish a casual link between the municipal action and the deprivation of rights.  Id.

Plaintiffs do not allege that there was any municipal policy or custom that led to the alleged constitutional violations, as required by Monell.  Therefore, all federal claims against the Department, including the alleged illegal search of D. Faccio's vehicle, will be dismissed.

### 4.  Violation of D. Faccio's Miranda Rights

According to the complaint, D. Faccio was questioned by the police after asserting a request for counsel:  "[A]lso I would like to add that when I asked for a lawyer they kept me asking me questions."  Lead Compl., 2 .  Defendants did not address this allegation.

The Supreme Court has not established a civil cause of action for Miranda violations pursuant to the Fifth Amendment, instead finding that Fifth Amendment violations occur at trial.  See Chavez v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 2001 (2003) (plurality opinion) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants . . .  a constitutional violation occurs only at trial." (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S. Ct. 1056, 1060 (1990)).  Furthermore, Justice Souter's concurring opinion in Chavez highlighted the policy danger of creating a civil damage remedy for Miranda violations:  "The most obvious drawback inherent in Martinez's purely Fifth Amendment claim to damages is its risk of global application in every instance of interrogation producing a statement inadmissible under Fifth and Fourteenth Amendment principles."  Id. at 778, 123 S. Ct. at 2007 (Souter, J. concurring).

The Chavez holding left intact the Second Circuit's finding that "the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'"  Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998) (quoting Neighbour v. Covert, 68 F.3d 1508, 1510–11 (2d

Cir. 1995)); see also Blond v. City of Schenectady, No. 10-CV-0598, 2010 WL 4316810, at *4 (N.D.N.Y. Oct. 26, 2010) (McAvoy, J.) ("A Section 1983 claim cannot stand solely on the basis of an alleged failure to administer Miranda warnings.").

Assuming that D. Faccio's allegations are true—that members of the Department continued to interrogate him after he requested counsel—he would only have a remedy if answers to these questions were used against him at trial.  Therefore, his claim for a Miranda rights violation will be dismissed.

### 5.  Illegal seizure of D.F. and A.F.

Plaintiffs allege that D.F. and A.F. were illegally seized and detained at the police station after D. Faccio's arrest.  Defendants did not respond to this allegation.  The complaint provides:  "I told the P.D. that I wanted my daughter [A.F.] to stay at the school till my wife came out of work to pick her up instead they took my daughter to the precinct with my son." Lead Compl., 2.

The Fourteenth Amendment protects parental rights as an aspect of substantive due process.  See Troxel v. Granville, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) (plurality opinion) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").  Thus, state interference of parental rights may be a constitutional violation.  In analyzing such a due process claim, the Second Circuit has found that a rational basis analysis is often sufficient.  See Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 460–62 (2d Cir. 1996) (rejecting that parents have a fundamental constitutional right to exempt children from educational requirements they object to on secular grounds); see also Leebaert v. Harrington, 332 F.3d 134, 140–43 (2d Cir. 2003)

(refusing, post-Troxel, to apply strict scrutiny on state's interference with parents' constitutional right to direct children's education).

Additionally, the doctrine of qualified immunity protects state actors from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callhan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009).  Even if the rights are clearly defined, "qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231, 129 S. Ct. at 815.

Other circuits have found that temporary care of minors by police after the arrest of an adult caretaker is reasonable and can even be constitutionally mandated under certain circumstances.  The Fifth Circuit found that the temporary care of minors by arresting officers can be an unavoidable consequence when a parent is lawfully arrested.  See Witherspoon v. United States, 838 F.2d 803, 807 (5th Cir. 1988).  In fact, the Seventh Circuit found a constitutional violation when police officers left minor children in dangerous circumstances after arresting the children's uncle.  See White v. Rochford, 592 F.3d. 381, 382–84 (7th Cir. 1979).

Members of the Department acted reasonably and perhaps even prudently by maintaining temporary custody of the children.  Further, because other courts have found similar conduct to be constitutional, members of the Department who took the children into

custody are protected by qualified immunity.  Thus, the claim that D.F. and A.F. were illegally seized will be dismissed.

### 6.  Illegal Questioning of Minors D.F. and A.F.

Plaintiffs claim that the police illegally questioned their minor children without their consent while the children were temporarily detained at the police station.  Defendants argue that any questioning was inconsequential as it was unrelated to any criminal investigation of D. Faccio.

As previously stated, parental rights are constitutionally protected as an aspect of substantive due process.  Troxel, 530 U.S. at 66, 120 S. Ct. at 2060.  However, the Second Circuit has often applied a rational basis analysis if there is an alleged violation of this right. See Immediato, 73 F.3d at 460–62;  Harrington, 332 F.3d at 140–43.  Furthermore, the officers are entitled to qualified immunity if it was objectively reasonable that they believed that their acts did not violate a constitutional right.  Kaminsky, 929 F.2d at 925.

According to plaintiffs, the police asked their children several questions: (1) Why did the family move to Glens Falls?; (2) Where does their father work?; (3) What school do they attend?; and (4) What are the names of their teachers?.  Lead Compl., 2.  The complaint notes that A.F. started to cry while being questioned.

Assuming that plaintiffs' allegations are true, the members of the Department are entitled to qualified immunity.  First, the questions were unrelated to D. Faccio's arrest for endangering the welfare of a minor.  Second, the children themselves were not under investigation for any criminal behavior; instead, they were simply under temporary police custody.  Overall, there is no indication that the questioning of D.F. and A.F. was unreasonable.  Furthermore, even if the questioning violated D. Faccio's parental rights,

there is no indication that this right was clearly established.  Because the police questioning

was not unreasonable and no clearly established right was violated, the members of the

Department who questioned D.F. and A.F. are entitled to qualified immunity.  Therefore, any

claims alleging the questioning of the minors constitutes a civil rights violation will be

dismissed.

### 7.  Racial Profiling

Plaintiffs assert that D. Faccio's arrest was a result of racial profiling and that his

arrest set off a chain of events that prompted organizations including, inter alia, the middle

school, the Department of Social Services, and National Grid to discriminate against the

Faccios.  Plaintiffs allege the existence of a racist conspiracy from statements made by the

Department during D. Faccio's questioning.  According to plaintiffs,

> [T]hey kept asking me questions about why did I move out here and why
> am I out in glens falls. [T]his town aint meant for me and my family.  I told
> them I wanted to live along good life with my kids and wife so whats the
> problem. [T]hey told me that when hispanic and blacks come out to G.F.[3]
> to sell drugs.

Lead Compl., 2.  Plaintiffs' allegations of racial profiling will be construed as a claim, pursuant

to § 1983, of selective prosecution in violation of the Equal Protection Clause of the

Fourteenth Amendment.  Defendants contend that D. Faccio was lawfully arrested and not

selectively prosecuted because of race or ethnicity.

To allege a violation of the Equal Protection Clause based on selective prosecution,

a plaintiff must show:  "(1) [that] the person, compared to others similarly situated, was

selectively treated; and (2) that such selective treatment was based on impermissible

---

[3] Presumably "G.F." is an abbreviation for Glens Falls.

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999)).

Although plaintiffs allege that members of the Department made biased statements, they do not make any factual allegations to support the conclusion that D. Faccio was selectively treated.  Instead, there was probable cause for D. Faccio's arrest due to the signed statement made by the thirteen-year-old student who accused D. Faccio of threatening him.  Nothing suggests, except for plaintiffs' unsupported conclusions, that D. Faccio was arrested because of his race or ethnicity.  Even if the arresting officers had improper views concerning certain racial or ethnic groups and made the biased statements which plaintiffs allege, there are no factual allegations to connect these biased statements and viewpoints with any selective treatment.  Because plaintiffs do not offer any factual allegations to support the conclusion that D. Faccio was selectively treated, any claim sounding in selective prosecution will be dismissed.

### B. Federal Law Claims Against School Defendants

Plaintiffs allege that the middle school, District, and the individual school defendants violated minor-plaintiff D.F.'s constitutional rights during the 2009-10 school year due to harassment by students, teachers, and staff that occurred every day or every other day.  Plaintiffs allege the harassment was "on the basis of race, color, orientation, nationality, ethnic[ity], sex, [and] origin" and list several specific incidents of harassment.  Member Compl., Dkt. No. 1, 1.  In addition, plaintiffs contend that they notified middle school and District officials of the harassment and bullying, but this only led to the escalation of the

harassment and bullying.  Finally, plaintiffs allege Parker filed a false report accusing

D. Faccio of carrying a gun in retaliation for his concerns about bullying and harassment that

were advanced during a meeting with Parker.

### 1.  Harassment and Bullying Claims

Plaintiffs allege the harassment and bullying was motivated by discriminatory

animus based on their race, color, orientation, nationality, ethnicity, and sex.[4]  In reading the

complaint most favorably to plaintiffs, these allegations could be construed as claims under

20 U.S.C. § 1681(a) (commonly referred to as "Title IX"); 42 U.S.C. § 1981; or 42 U.S.C.

§ 2000d (commonly referred to as "Title VI").  The allegations can also be construed as

claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, specifically the

Equal Protection Clause and substantive due process.  Furthermore, as plaintiffs allege that

both staff and students harassed and bullied D.F., there are claims against the staff for

harassing D.F. directly, as well as a claim for the staff's deliberate indifference to the

harassment by D.F.'s fellow students.  Finally, plaintiffs claim the District failed to supervise

the staff of the middle school.  Defendants contend that plaintiffs' conclusions lack the

support of factual allegations.

### a.  Section 1981, Title VI, and Title IX Claims

Section 1981 provides that "all persons within the jurisdiction of the United States

shall have the same right . . . to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981 (2006).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or

---

[4]  Plaintiffs do not specify which category or categories are the basis for the discrimination.

national origin, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance."  42

U.S.C. § 2000d (2006).  In order to support a claim under § 1981 or Title VI, a plaintiff must

show, inter alia, that:  (1) the defendant discriminated on a prohibited basis; (2) the

discrimination was intentional; and (3) the discrimination was a substantial or motivating

factor for the defendant's action.  Lopez v. Bay Shore Union Free Sch. Dist., 668 F. Supp. 2d

406, 413–14 (E.D.N.Y. 2009) (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001)).

In addition, teachers, administrators, and boards of education can be liable for student-on-

student racial harassment if their deliberate indifference to racial harassment can be

interpreted as discriminatory.  See Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140–41

(2d Cir. 1999).

Title IX encompasses "teacher-on-student hostile educational environment sexual

harassment."  Hayut v. State Univ. of N.Y., 352 F.3d 733, 749 (2d Cir. 2003) (citing Franklin

v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 75, 112 S. Ct. 1028, 1037 (1992)).  Furthermore, a

school may be liable under Title IX if it is deliberately indifferent to student-on-student sexual

harassment.  See Gant, 195 F.3d at 140.

Iqbal requires that legal conclusions in pleadings be supported by factual

allegations, 129 S. Ct. at 1949–50, which suggests that discriminatory animus be pleaded

with particularity.  See Lopez, 668 F. Supp. 2d at 414.  Generally, facts that support a

reasonable inference of animus include long-term practices of discrimination or comments

made by individuals that suggest bias.  Id.

Plaintiffs allege that the harassment and bullying were motivated by bias on the

grounds of race, color, sexual orientation, nationality, ethnicity, sex, and origin.  However,

they do not allege facts to support this legal conclusion.[5]  Plaintiffs do not provide any incidents where employees or students at the middle school discriminated against any student—including D.F.—due to race, ethnicity, or gender.  Neither do plaintiffs allege any incidents where employees or students at the middle school made comments that suggested bias.

Therefore, the conclusion that D.F. was harassed based on his race, color, sexual orientation, nationality, ethnicity, sex, or origin has no factual support and all claims under § 1981, Title VI, and Title IX will be dismissed.

### b.  Section 1983 Equal Protection Claims

A § 1983 equal protection claim under the Fourteenth Amendment does not require animus.  See Lopez, 668 F. Supp. 2d at 419.  Instead, a plaintiff must show:  "(1) [that] the person, compared to others similarly situated, was selectively treated; and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Freedom Holdings, Inc., 357 F.3d at 234 (quoting Lisa's Party City, Inc., 185 F.3d at 16).  A violation of the Equal Protection Clause by a state actor in the school setting can either be through direct action or due to deliberate indifference to student-on-student harassment.  See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, passim, 129 S. Ct. 788, passim (2009) (finding equal protection claim under § 1983 for student-on-student sexual harassment due to deliberate indifference).

---

[5]  The only alleged incident that contains any allegations supporting an inference of a racially, gender-based, or ethnically discriminatory motive was an incident where D.F. was harassed by an unknown driver of a pick-up truck who followed D.F. off school grounds.  There are no allegations that this individual is connected in any manner with the middle school or the District.

Plaintiffs only allege one specific instance of selective treatment—that teacher McPhillip punished D.F. for a "writing" when other students who had created similar "writings" were not punished.  However, plaintiffs do not allege that McPhillip's selective treatment of D.F. was based on D.F.'s race, color, gender, sexual orientation, or ethnicity.  Additionally, plaintiffs do not allege that McPhillip's actions were based on any malicious or bad faith intent.  As plaintiffs do not allege that McPhillip's actions were based on impermissible considerations, they do not properly plead a § 1983 claim.  Therefore, any § 1983 claim against McPhillip for a equal protection violation will be dismissed.

Finally, as the McPhillip incident was the only alleged instance of selective treatment, it is the only incident that merits an equal protection analysis.  In the other alleged instances, plaintiffs do not argue that D.F. was selectively treated—by either students, teachers, administration, or staff of the middle school—compared to similarly situated students.  Therefore, there are no valid equal protection claims for direct harassment of D.F. by teachers, staff, or administration, nor are there any valid claims for deliberate indifference.

### c. <u>Section 1983 Substantive Due Process Claims</u>

In construing the pleadings liberally, plaintiffs allege substantive due process violations of D.F.'s rights.  The complaint includes two allegations of excessive physical force, an allegation of a teacher yelling and spitting on D.F., and an allegation that D.F. was deprived of food during lunch detention.  Furthermore, the alleged lack of response by the middle school and District to the claims of harassment and bullying can also be construed as substantive due process violations.

For a claim of a substantive due process violation to survive a motion to dismiss, a plaintiff must "allege governmental conduct that 'is so egregious, so outrageous, that it may

fairly be said to shock the contemporary conscience.'" <u>Velez v. Levy</u>, 401 F.3d 75, 93 (2d

Cir. 2005) (quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708,

1717 n.8 (1998)).

### i. **Excessive Force Claims**

Plaintiffs allege that Reed used excessive force against D.F..  They claim that Reed

"harassed our son in the School Cafeteria, cursed, stated profanity at my son, grabbed

[D.F.'s] arm hard and said did you just tell me to fuck myself?"  Member Compl., 1.  Plaintiffs

allege that D.F. suffered stress, feared that Reed would use physical force again, and

avoided eating breakfast at the cafeteria in the future to avoid Reed.  Plaintiffs also allege an

incident where school custodian Dwyer placed his hands on D.F. and forced him to sit down

in the cafeteria.  Defendants contend that these actions did not rise to the level of

constitutional violations.

Excessive force by a government actor—including school employees—is a violation

of substantive due process if it shocks the conscience.  <u>Johnson v. Newburgh Enlarged Sch.</u>

<u>Dist.</u>, 239 F.3d 246, 252–53 (2d Cir. 2001).  Factors that determine whether actions

constitute excessive force include "the need for the application of force, the relationship

between the need and the amount of force that was used, the extent of injury inflicted, and

whether force was applied in a good faith effort to maintain or restore discipline or maliciously

and sadistically for the very purpose of causing harm."  <u>Id</u>. at 251–52 (citing <u>Metzger v.</u>

<u>Osbeck</u>, 841 F.2d 518, 520 (3d Cir. 1988)).  Examples of excessive force in the school

setting include grabbing a student, slamming him against a wall, and holding him there,

<u>Knicrumah v. Albany City Sch. Dist.</u>, 241 F. Supp. 2d 199, 210–11 (N.D.N.Y. 2003) (Hurd,

J.), and grabbing a student by the neck, dragging him across the floor, slamming him against

the bleachers four times, ramming his head against a metal fuse box, and punching him in the face.  <u>Johnson</u>, 239 F.3d 246, at 249–53.  Conversely, in <u>Smith v. Half Hollow Hills Cent. Sch. Dist.</u>, 298 F.3d 168 (2d Cir. 2002), the Second Circuit held that a teacher slapping a seventh-grade student in the face after the student accidently broke an egg during a laboratory exercise was not an example of excessive force.  <u>Id</u>. at 172–74.  The Second Circuit refrained, however, from creating a per se rule that a slap would never constitute excessive force.  <u>Id</u>. at 172–73.

In the Reed incident, Reed allegedly grabbed D.F. by the arm and said, "did you just tell me to fuck myself?"  Reed's statement shows that he was under the belief that D.F. had swore at him.[6]  School principals are expected to maintain student discipline and cannot tolerate students using profanity.  Therefore, Reed had a good faith rationale to restore discipline by quickly confronting D.F..  Grabbing D.F.'s arm may have been an inappropriate response, but it was part of his good faith effort to restore discipline.  The extent of the inflicted injury was not substantial, leaving only a mark.  Even if there was no need to apply physical force, which must be assumed for the purposes of this motion, the lack of significant injury and the good faith rationale for the action show that Reed's alleged actions did not constitute excessive force.  Finally, Reed's alleged conduct is less egregious than the defendant in <u>Smith</u>—who slapped a seventh-grade student for accidental clumsiness during a lab experiment.  Thus, the excessive force claim against Reed will be dismissed.

In the Dwyer incident, Dwyer put his hands on D.F. and forced him to sit down.  It is unclear whether Dwyer had any justification for this action; therefore, it must be assumed for

---

[6]  Whether or not D.F. swore at Reed is unknown but based on plaintiffs' allegations, Reed <u>thought</u> D.F. had swore at him.  Even if Reed's perception was incorrect, he still had a good-faith basis to discipline D.F..

the purposes of this motion that he had none.  However, D.F. does not allege any injury or

emotional trauma from this event and there are no facts to support an inference that Dwyer

intended to cause harm.  Altogether, an examination of the case law—especially

Smith—shows that Dwyer's alleged actions do not rise to the level of shocking the conscious.

Therefore, Dwyer did not use excessive force against D.F. and this claim will be dismissed.

### ii.  Spitting Incident Claim

Plaintiffs allege that teacher Zilch yelled and spat on D.F.  Defendants did not

address this allegation on substantive due process grounds.

Other circuits have found that verbal abuse alone is not normally a constitutional

violation—even in the context of teachers belittling students.  See Doe v. Gooden, 214 F.3d

952, 955 (8th Cir. 2000);  G.C. v. Sch. Bd. of Seminole Cnty., 639 F. Supp. 2d 1295, 1304

(M.D. Fla. 2009).  Intentional spitting has not been deemed to be a constitutional violation, at

least in the prison setting.  See Tafari v. McCarthy, 714 F. Supp. 2d 317, 348 (N.D.N.Y.

2010) (Hurd, J.) (finding that corrections officer who spat chewing tobacco in the face of a

prisoner did not violate the Eighth Amendment).  There is no case law suggesting that

spitting on a student is the type of behavior that would shock the conscious.

If plaintiffs' allegations are true that Zilch intentionally spat on D.F., her actions may

have been offensive, but not a violation of D.F.'s substantive due process rights.  Therefore

this claim will be dismissed.

### iii.  Deprivation of Lunch as Punishment

Plaintiffs allege that on certain days, D.F. received lunch detention in Parker's office

and was prohibited from eating lunch.  Defendants did not respond to this allegation.

For government action to violate substantive due process it must be so egregious and outrageous as to shock the conscience.  Levy, 401 F.3d at 93.  Deprivation of lunch can be an element of a constitutionally prohibited punishment.  See Orange v. Cnty. of Grundy, 950 F. Supp. 1365, 1371–73 (E.D. Tenn. 1996) (finding that placing schoolchildren in isolation for an entire school day without access to lunch or toilet facilities was unconstitutional).  There is no authority, however, that a school withholding a student's lunch, by itself, is a constitutional violation.  In the prison setting, deprivation of food can violate the Eighth Amendment, but only if it creates a serious danger to an inmate.  See Butler v. Hogue, No. 9:08:-CV-264, 2010 WL 4025886, at *3 (N.D.N.Y. Oct. 13, 2010) (Sharpe, J.) (citing Beckford v. Portuondo, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (Kahn, J.)).  However, deprivation of a single meal is not a constitutional violation.  Id. at *3 ("Deprivation of only two meals over a two-day period is insufficient to make out a constitutional claim.").

D.F.'s health was never alleged to be in danger.  Parker depriving D.F. of lunch as punishment does not rise to a level that shocks the conscious.  Therefore, any § 1983 claim based on the withholding of lunch will be dismissed.

### iv.  Deliberate Indifference to Student-on-Student Harassment

Plaintiffs allege that they notified middle school and District staff of the harassment and bullying of D.F. by other students.  However, they contend that the harassment and bullying did not cease and actually escalated after they brought attention to the problem.  Although plaintiffs allege that the harassment was due to race, color, orientation, nationality, ethnicity, and sex, they do not support this conclusion with any facts.  As noted previously, plaintiffs do not allege any facts to support their legal conclusion that D.F. was bullied and harassed by other students on discriminatory grounds; therefore, no claim based on a

violation of the Equal Protection Clause or any statute, such as Title IX, due to deliberate indifference can be supported.  The allegation that the middle school failed to prevent the harassment of D.F. by other students will be construed, however, as a § 1983 claim that D.F.'s substantive due process rights were violated.

Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S. Ct. 998, 1004 (1989).  However, the State owes a duty to protect persons in custody, and deliberate indifference to private violence against those in custody can be a violation of the Due Process Clause.  Id. at 199–200, 109 S. Ct. at 1005–06.  Although the Second Circuit is silent on whether children are in custody while at school, which would impose a duty on the State to protect them from harm, see DiStiso v. Town of Wolcott, 750 F. Supp. 2d 425, 446 (D. Conn. 2010), courts in the Northern District of New York have held that schoolchildren are not in state custody.  See Santucci v. Newark Valley Sch. Dist., No. 3:05-CV-0971, 2005 WL 2739104, at *3 (N.D.N.Y. Oct. 24, 2005) (McAvoy, J.); Patenaude v. Salmon River Cent. Sch. Dist., No. 3:03-CV-1016, 2005 WL 6152380, at *11 (N.D.N.Y. Feb. 16, 2005) (McAvoy, J.).  Additionally, other circuits have found that schoolchildren are not in state custody while at school.  See Hasenfus v. LaJeunesse, 175 F.3d 68, 71–72 (1st Cir. 1999); Doe v. Hillsboro Ind. Sch. Dist., 113 F. 3d 1412, 1415 (5th Cir. 1997); Wyke v. Polk Cnty. Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997); Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 911 (6th Cir. 1995); Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 731–32 (8th Cir. 1993); D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1368–72 (3d Cir. 1992); Maldonado v. Josey, 975 F.2d 727, 731–32 (10th Cir. 1992); J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 272–73 (7th Cir. 1990).

Therefore, schools do not owe a duty to protect students from harm from fellow students under the Due Process Clause.

The defendants did not owe a duty to D.F. to protect him from harm from fellow students because he was not in state custody while at school.  Thus, any claims alleging deliberate indifference to student-on-student harassment pursuant to the Due Process Clause will be dismissed.

### v. **District's Failure to Supervise Middle School Employees**

Plaintiffs allege that they notified District staff, including the superintendent, of the harassment by teachers, administration, and staff.  They allege that the harassment escalated after they made their complaints.  These statements will be construed as allegations that the District was deliberately indifferent to D.F.'s constitutional rights by a failure to supervise theory—specifically that the District failed to investigate and remedy repeated claims of constitutional violations.

A municipality, such as a school district, "cannot be liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691, 98 S. Ct. at 2036.  Instead, "municipal liability under § 1983 occurs, if at all, at the level of policymaking." Ciraolo v. City of N.Y., 216 F.3d 236, 242 (2d Cir. 2000).  Therefore, a plaintiff must establish that a "violation of his constitutional rights resulted from a municipal custom or policy." Vann v. City of N.Y., 72 F.3d 1040, 1049.  This policy "must be either facially unconstitutional or unconstitutional as applied because of the municipality's deliberate indifference to the rights of persons with whom municipal employees may encounter." Knicrumah, 241 F. Supp. 2d at 206 (internal citations and quotation marks omitted).

The Faccios have not, however, sufficiently pleaded that D.F.'s constitutional rights were violated by the staff at the middle school.  As plaintiffs have not alleged facts supporting any violation of constitutional rights, they cannot establish a claim that a violation of D.F.'s constitutional rights resulted from a custom or policy of the District.  Accordingly, any claim that the District violated D.F.'s substantive due process rights under a deliberate indifference theory will be dismissed.

### 2.  Section 1983 First Amendment Claim

Plaintiffs claim that in December 2009,[7] they met with middle school officials to file complaints against teachers who had harassed D.F..  On December 13, 2009, D. Faccio met with Parker to discuss two specific incidents of harassment against D.F.—one by an unknown pick-up truck driver and the other by members of the middle school's football team.  D. Faccio alleges that after the December 13 meeting in which he complained of the harassment, Parker filed a false report with the police.  This claim will be construed as a First Amendment retaliation claim.  Defendants contend that no First Amendment violation occurred.

To allege a free speech claim under § 1983, a plaintiff must show:  (1) an interest protected by the First Amendment; (2) that the defendants' actions were motivated or substantially caused by the exercise of the plaintiff's First Amendment right; and (3) the defendants' actions effectively chilled the exercise of the plaintiff's First Amendment right. Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

---

[7]  The exact date of this meeting is unknown.  Two meetings occurred in December 2009.  One of the meetings occurred on December 13, 2009.

Plaintiffs do not allege that their free speech rights were chilled as a result of D. Faccio's arrest.  In fact, plaintiffs continued to exercise their First Amendment rights by writing letters to the District, the New York Civil Liberties Union, and the President of the United States of America regarding the harassment of D.F..  Furthermore, plaintiffs allege that they have spoken with Reed, Parker, the superintendent of the District, and a person named "Mr. Cherry" from the superintendent's office regarding the harassment of D.F..[8] Assuming Parker filed a false report, her actions did not have any effect on plaintiffs' exercise of their First Amendment rights.  Thus, the free speech retaliation claim will be dismissed.

### 3.  Malicious Prosecution Claim against Parker under § 1983

Plaintiffs' allegation that Parker filed a false report against D. Faccio can also be construed as a malicious prosecution claim under § 1983.

Citizens can be deemed to have initiated criminal proceedings against a suspect if they "instigated the arrest by being particularly insistent, or in some cases, providing false information to police."  Fabrikant v. French, 722 F. Supp. 2d 249, 254 (N.D.N.Y. 2010) (Hurd, J.) (citations omitted).  To establish a malicious prosecution claim, a plaintiff must show that:  (1) the defendant initiated a prosecution against plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.  Id. at 253 (citing Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

---

[8]  It is unclear on what dates the meetings were held.  It is possible that all of the meetings occurred prior to December 15, 2009.  However, the letters to the New York Civil Liberties Union, the District, and President Obama were written after D. Faccio's arrest.

Taking plaintiffs' allegations as true, Parker made a false report to the police that D. Faccio had a gun.  However, he was arrested for endangering the welfare of a child—not for any sort of weapon possession offense.  There is no indication that Parker's allegations were responsible for D. Faccio's prosecution, and the arrest report that defendants submitted in support of their motion to dismiss does not mention a gun.  Additionally, D. Faccio does not allege that the prosecution was terminated in his favor or that he suffered a post-arraignment seizure.  Thus, plaintiffs do not state a valid claim of malicious prosecution against Parker and the claim will be dismissed.

## C.  State Law Claims Against Police Defendants and School Defendants

Plaintiffs list a variety of claims under state law against both sets of defendants. Both sets of defendants contend that plaintiffs did not file a notice of claim.

Under New York Law, a notice of claim is a condition precedent to file a tort claim against a public corporation, N.Y. Gen Mun. § 50-e, and against police officers acting within the scope of their employment.  N.Y. Gen. Mun. § 50-j; see also LaGrange v. Ryan, 142 F. Supp. 2d 287, 295 (N.D.N.Y. 2001) (Hurd, J.).  It is also a condition precedent to maintain a tort action against a school district or one of its employees.  N.Y. Educ. Law § 3813(2); see also TC v. Valley Cent. Sch. Dist., --- F. Supp. 2d. ---, No. 7:09-CV-9036, 2011 WL 1345181, at *20 (S.D.N.Y.  Mar. 30, 2011).  Failure to satisfy this requirement is grounds for dismissal. Id.  Finally, federal courts have no authority to permit a plaintiff to file a late notice of claim. Id.

Plaintiffs did not file a notice of claim within ninety days of the occurrence of the complaints.  Therefore, all state law claims will be dismissed.

### D.  Police Defendants' Counterclaim for Attorney's Fees

The police defendants counterclaimed for attorney's fees pursuant to 42 U.S.C. §
1988, asserting that plaintiffs' claims have no basis in fact and/or law.  Under  § 1988(b), a
court has the discretion to award reasonable attorney's fees to a "prevailing party" in, inter
alia, civil rights litigation.  To achieve "prevailing party" status, a plaintiff must secure a
judicially sanctioned material alteration of the legal relationship between the parties.  See
e.g., Shepherd v. Wenderlich, 746 F. Supp. 2d 430, 432 (N.D.N.Y. 2010) (Hurd, J.).

While the police defendants' motion to dismiss will be granted and all claims
against them dismissed, they are not entitled to an award of attorney's fees.  The complaint
was not brought entirely without merit nor in bad faith.  Accordingly, their counterclaim for
attorney's fees pursuant to § 1988 will be dismissed.

## V.  CONCLUSION

Plaintiffs' claim that D. Faccio was falsely arrested will be dismissed as the police
defendants had probable cause to arrest.  Because the police defendants searched
D. Faccio incident to his lawful arrest, the illegal search claim will be dismissed.  Plaintiffs'
claim that the police defendants illegally searched his vehicle will also be dismissed because
there are no facts alleging that Eggleston was personally involved, and plaintiffs did not
allege a municipal policy or custom by the Department which caused their injuries, as
required by Monell.  The claim for a Miranda violation will also be dismissed because no civil
remedy exists.  The claims that plaintiffs D.F. and A.F. were illegally seized and questioned
will be dismissed because the police defendants are protected by qualified immunity.
Because plaintiffs do not provide any factual allegations to support their claim of selective
prosecution due to racial profiling, this claim will be dismissed.

All of plaintiffs' § 1981, Title VI, and Title IX claims against the school defendants will be dismissed because they failed to support these claims with factual allegations.  Since plaintiffs do not allege that any treatment was based on impermissible considerations, their equal protection claim that D.F. was selectively treated by McPhillip will be dismissed.  The First Amendment retaliation claim against Parker will also be dismissed as plaintiffs' First Amendment rights were not chilled.  Further, because D. Faccio's arrest was unrelated to Parker's alleged false report, the malicious prosecution claim against Parker will be dismissed.

The excessive force, spitting incident, and deprivation of lunch substantive due process claims will also be dismissed because these incidents do not shock the conscious.  Plaintiffs' substantive due process claim that the middle school staff failed to prevent student-on-student harassment will be dismissed because children are not in state custody while at school.  Because the middle school staff did not violate plaintiffs' constitutional rights, any claims against the District for failure to supervise the middle school staff will also be dismissed.

All state law claims will be dismissed because plaintiffs failed to file a notice of claim as required by New York law.  Finally, the police defendants' counterclaim for attorney's fees pursuant to § 1988 will be dismissed because the lawsuit was not brought in bad faith or without merit.

Therefore it is

ORDERED that

1.  Defendants Christopher Eggleston and Glens Falls Police Department's motion to dismiss is GRANTED;

2.  Defendants Glens Falls City School District, Glens Falls Middle School, Christopher Reed, Hank Dwyer, Kate McPhillip, Laurey Parker, and Anne Zilch's motion to dismiss is GRANTED;

3.  The complaint is DISMISSED in its entirety; and

4.  Defendants Christopher Eggleston and Glens Falls Police Department's counterclaim for attorney's fees pursuant to 42 U.S.C. § 1988 is DISMISSED.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  August 22, 2011
        Utica, New York.